**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

HDI GLOBAL SPECIALTY, SE,
f/k/a INTERNATIONAL INSURANCE
COMPANY OF HANNOVER SE,

      Plaintiff,

                              CASE NO:

v.

SEVAN PLASTERING, INC., AND
PULTE HOME COMPANY, LLC,

      Defendants.
_____

## COMPLAINT

Plaintiff HDI Global Specialty SE f/k/a International Insurance Company of Hannover SE ("HGS" or "plaintiff"), by and through undersigned counsel, hereby sues Defendants Sevan Plastering, Inc. ("Sevan Plastering"), and Pulte Home Company, LLC ("Pulte"), and alleges as follows:

## INTRODUCTION

1.    This is an insurance coverage action for declaratory relief and rescission in relation to an insurance policy issued to defendant Sevan Plastering as follows: (1) Policy No. IG011000594-00, effective from March 30, 2012, to March 30, 2013 ("Policy").

272474604v.1

2.     The underwriter of plaintiff HGS issued the Policy to Sevan Plastering in connection with a contractors' insurance program. In the contractors' insurance program, HGS undertakes the risk that its insured(s) will become legally obligated to pay "bodily injury" or "property damage" caused by an "occurrence" during the policy period. That includes the risk that the negligence of HGS's insured will cause damage to property other than the insured's own work after the insured completes its work, if the completion of the work occurs during the term of the policy and the damage occurs during the term of the policy. The policy is not a performance bond insuring the insureds' own defective work or materials, nor does it provide insurance coverage for work the insured completes prior to the inception of the particular policy.

3.     In the contractors' insurance program, HGS does not insure the risk that the insured's independent contractors/subcontractors will cause "bodily injury" or "property damage."  HGS only undertakes the risk of its own insured's negligence causing "bodily injury" or "property damage." For that reason, the application that prospective insureds submit to apply for a policy under the contractors' insurance program specifically requests information designed to ensure that HGS will not be saddled with the risk that independent contractors' negligence will cause injury or damage. In this regard, the Policy issued to Sevan Plastering, Inc., contains provisions that ensure they will not be triggered in the first instance if there is any

2

risk that the negligence of an independent contractor of the insured causes injury or damage.

## JURISDICTION AND VENUE

4.     This is an action for declaratory judgment pursuant to U.S.C. § 2201-2202 for the purpose of determining an actual controversy between the parties in relation to the Policy issued to Sevan Plastering, and under which Pulte claims to be an additional insured. In the alternative, this action seeks rescission of the insurance Policy under Florida law.

5.     This action is currently ripe for adjudication as an actual controversy exists between the parties regarding coverage under the Policy in connection with an underlying action filed in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida, entitled *Pulte Home Co., LLC v. 84 Lumber Co., et al.,* Case No. 2018-CA-012516-O ("the underlying action").

6.     This Court has jurisdiction, and venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the underlying action is pending in Orange County, Florida, and the construction of the Project occurred in Orange County, Florida.

## THE PARTIES

7.     Plaintiff HGS is a German corporation with its principal place of business located in Hannover, Germany.

8.     Defendant Sevan Plastering is an inactive Florida corporation whose registered address is 1635 E. Highway 50, Clermont, Florida, and who is otherwise subject to this Court's personal jurisdiction. Sevan Plastering's owners are residents of Lake County, Florida, and are citizens of the State of Florida. Sevan Plastering and its owners conducted business in the State of Florida during the relevant period, and one of Sevan Plastering's owners is its registered agent.

9.     Defendant Pulte is a Michigan corporation authorized to conduct business in the State of Florida and is conducting business in and throughout the State of Florida.

10.     Plaintiff is not a citizen of Florida, Plaintiff and Defendants are diverse, and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. Therefore, the Court has jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332.

## THE CONSTRUCTION PROJECT

11.     This action arises from the construction of a residential community known as Lake Sawyer South Community in Orange County, Florida ("the Project"). Pulte, as the developer and general contractor, entered into agreements with various subcontractors, including stucco contractor, Sevan Plastering, to complete construction of the Project.

12.     Pulte and Sevan Plastering entered into a Master Trade Contractor Agreement for the Project effective June 30, 2010. Pulte alleges deficiencies in Sevan's work and seeks a declaration that Pulte qualifies as an additional insured under the HGS insurance Policy issued to Sevan such that HGS owes indemnity to Pulte for damages stemming from Sevan's allegedly deficient work.

## THE UNDERLYING ACTION

13.     On November 14, 2018, Pulte filed a complaint against 16 subcontractors, including the insured Sevan Plastering, as well dozens of insurers, including HGS, titled *Pulte Home Company, LLC v. 84 Lumber Company, et al*., in the Ninth Judicial Circuit in and for Orange County Florida, Case No: 2018-CA-012516-O. The complaint alleges causes of action against Sevan Plastering for breach of contract, indemnification, violation of building code and breach of warranty.

14.     On October 28, 2019, Pulte filed a second amended complaint. The second amended complaint alleges that, between 2006 and 2012, Pulte developed the Lake Sawyer South Community located in Orange County, Florida, which consists of single family homes (Berkshire Park) and two-story townhomes (Berkshire Place). Pulte alleges that, between 2016 and 2018, Pulte received requests from homeowners for inspection of homes relative to building envelope issues; that

it conducted various inspections of the requested homes; and that, upon completion of the inspections, Pulte proceeded to make repairs to the various homes.

15.    Pulte claims that Sevan's work was defective, causing Pulte to inspect and repair multiple homes and townhomes. Pulte also alleges that Sevan failed to maintain insurance adding Pulte as an additional insured and failed to indemnify Pulte as required under the subcontract.

16.    Pulte alleges that it qualifies as an additional insured under the HGS policy. Pulte alleges that the HGS owes Pulte a defense as to the homeowner claims under Sevan Plastering's policies for the following reasons:

(a)    Pulte is vicariously liable for the work of its subcontractors;

(b)    The allegations are of defective workmanship by Sevan and alleged damages to other property as a result;

(c)    The damages constitute an "occurrence" under the policies;

(d)    Damage occurred on the portion of the premises upon which neither Pulte nor Sevan were working directly or indirectly while performing operations and/or fall within the completed operations hazard; and

(e)    The damages do not fall solely or entirely within an exclusion and/or limitations of the policies.

272474604v.1

17.     Count 124 in the underlying action is for breach of contract against HGS.  Pulte claims that HGS breached the policy by not indemnifying Pulte as an additional insured for the homeowner claims.

## THE UNDERWRITING OF THE POLICY

18.     In February and March 2012, Sevan Plastering submitted two insurance applications for a policy including commercial general liability ("CGL") coverage to Twenty Mile Insurance, the underwriter of the Policy. One application was on an Acord Commercial Insurance Application form ("Acord Application") and the other was a Twenty Mile insurance application ("Twenty Mile Application").

19.     After receiving the Application for the Policy, Twenty Mile undertook its underwriting process to determine if it would issue the requested insurance to Sevan Plastering, and, if so, on what terms, including the premium rate. Twenty Mile based its underwriting and evaluation of the risk on the factual representations in the two Applications for the Policy.

20.     The Twenty Mile Application asks specific questions to ensure that HGS does not undertake the risk caused by independent contractors' negligence. The following contains Sevan Plastering's marked responses to these questions on the Twenty Mile Application for the Policy.

- Uses written agreements with subcontractors 100% of time: Yes

- Request Certificate and Additional Insured from Sub-contractors: Yes

272474604v.1

21.     Sevan Plastering responded by marking "Yes" to each of the questions above on the Twenty Mile Application.

22.     The following representation appears in the Twenty Mile Application right above the signature line for the applicant:

**ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR ANOTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSES OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECT THE PERSON TO CRIMINAL AND** (NY: SUBSTANTIAL) **CIVIL PENALTIES**. (Not applicable in CO, HI, NE, OH, OK, OR or VT; in DC, LA, ME, and VA, insurance benefits may also be denied)

THE UNDERSIGNED IS AN AUTHORIZED REPRESENTATIVE FOR THE APPLICANT AND CERTIFIES THAT REASONABLE ENQUIRY HAS BEEN MADE TO OBTAIN THE ANSWERS TO QUESTIONS ON THIS APPLICATION.  HE/SHE CERTIFIES THAT THE ANSWERS ARE TRUE, CORRECT AND COMPLETE TO THE BEST OF HIS/HER KNOWLEDGE.

[Emphasis Included in Original]

23.     The foregoing questions were material to HGS's undertaking of the risk. Had the insured responded to these questions by answering "No," the underwriter would not have issued the Policy on the same terms.

24.     Sevan Plastering represented that it affirmatively obtains written agreements with subcontractors 100% of the time; and that it obtains certificates of

insurance and additional insured endorsements from any and all subcontractors. Sevan Plastering did not in fact obtain written agreements with subcontractors 100% of time. It also did not obtain a certificate of insurance reflecting its inclusion as an additional insured on the insurance policies of its independent contractors in connection with the project. Sevan Plastering's misrepresentations that it obtained written contracts with subcontractors and certificates of insurance reflecting its inclusion as an additional insured on the insurance policies of its independent contractors were material to underwriting the risk. The underwriter issued the Policy in reliance on these misrepresentations.

25.     Sevan Plastering 's misrepresentations on its insurance applications did not come to the forefront until discovery was undertaken in the underlying action which revealed that Sevan Plastering did not obtain written agreements with subcontractors 100% of time, nor did it obtain certificates of insurance reflecting its inclusion as an additional insured on the insurance policies of its independent contractors. Prior to the discovery conducted on this issue, HGS was not aware that Sevan Plastering had made the various misrepresentations described above.

## **THE POLICY**

26.     HGS issued the Policy to Sevan Plastering, which is a commercial general liability policy of insurance Policy No. IG011000594-00, for the policy period March 30, 2012, to March 30, 2013. (HGS Policy, Ex. 1.)   The Policy

9

provides limits of $1 million Each Occurrence, and $1 million for Personal and Advertising Injury, subject to a $2,500 per claim deductible and a $2 million General Aggregate (including Products-Completed Operations). The Policy includes CGL Form CG 00 01 12 07.

27.     Coverage A provides Bodily Injury and Property Damage Liability Coverage for those sums the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" caused by an "occurrence." The Policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The Policy defines "property damage" as physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

28.     The coverage form contains the following pertinent exclusions:

This insurance does not apply to:

**j.  Damage To Property**

"Property damage" to:

* * *

**(4)** Personal property in the care, custody or control of the   insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working

10

directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(**6**) That particular part of any property that must be restored, repaired or replaced be-cause "your work" was incorrectly performed on it.

\* \* \*

Paragraph (**6**) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

### k.  Damage To Your Product

"Property damage" to "your product" arising out of it or any part of it.

### l.  Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

### m. Damage To Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

11

272474604v.1

### n. Recall Of Products, Work Or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

29.     The Policy contains the following Prior Completed Work Exclusion,

**Form CIC / 2009 12-1-06**:

### PRIOR COMPLETED WORK – EXCLUSION

\* \* \*

The following exclusion is added to Paragraph 2., Exclusions of Section 1 – Coverage A – Bodily Injury and Property Damage Liability and Paragraph 2., Exclusion of Section 1 – Coverage B – Personal and Advertising Injury Liability:

**SCHEDULE**

**Date: N/A**

The inception date of this policy unless an earlier date is shown in the above SCHEDULE as applicable to this endorsement.

1. This insurance does not apply to "bodily injury", "property damage". "personal injury" and "advertising injury" included with the "Products – Completed Operations Hazard" and arising out of "your work" completed prior to the date listed in the above SCHEDULE.

12

2.    Paragraph a. of the "Products-completed operations hazard" definition in the DEFINITIONS Section is replaced by the following:

a. Includes all "bodily injury", "property damage", "personal injury" and "advertising injury" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1)    Products that are still in your possession; or

(2) Work that has not yet been completed or abandoned. "Your work" will be deemed completed at the earliest of the following times:

(a)   When all of the work called for in your contracted has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization.

(3) Work that may need service, maintenance correction, repair, or replacement, but which is otherwise complete, will be deemed completed as set forth in paragraph 2.a (2) of this endorsement.

Form: CIC / 2009 12-1-06

30.    It also contains a Condominium or Townhouse Liability Exclusion,

**Form CIC / 2012 12-1-06**, which provides as follows:

## CONDOMINIUM OR TOWNHOUSE LIABILITY – EXCLUSION

* * *

This Policy is hereby amended as follows:

SECTION 1. COVERAGE, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE, Paragraph 2. Exclusions and SECTION 1. COVERAGE, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY, Paragraph 2. Exclusions are amended to add the following:

This insurance does not apply to any "bodily injury", "property damage", "personal injury" or "advertising injury" nor do we have any duty to defend any:

Claim, whether or not within the "products-completed operations hazard" arising from, related to or in any way connected with "your work" or "your product" which is part of or incorporated into or upon a condominium, townhouse, mixed-use project involving commercial uses with condominiums, townhouse, and any and all associated, appurtenant structures and common areas or to personal injury or advertising injury arising or resulting from your operations performed upon, at a condominium, townhouse, mixed-use project involving commercial uses with condominiums, townhouse, and any and all associated, appurtenant structures and common areas.

This Exclusion applies to "property damage", "bodily injury", "personal injury", or "advertising injury" arising from, related to or connected with ongoing operations and/or completed operations, including "your work" or "your product", performed or supplied with respect to any apartment project or structure which, at the time a claim for such "property damage", "bodily injury", "personal injury", or "advertising injury" is first made, has been or is being converted into a condominium or townhouse, whether your operations, including "your work" or "your product", were performed, incorporated or supplied before or after the apartment was converted to a condominium or townhouse.

A project or development of condominiums, townhouse, mixed-use project involving commercial uses with condominiums, townhouse, and any and all associated, appurtenant structures and common areas includes such

14

projects or developments where any or all of the units are held for rental or lease.

Liability for "property damage", "bodily injury", "personal injury", or "advertising injury" of any insured, or any person or entity for which you have assumed liability in an "insured contract", arising from, related to or in any way connected with the operations on or products supplied to a condominium, townhouse, mixed-use project involving commercial uses with condominiums, townhouse, and any and all associated, appurtenant structures and common areas.

CIC / 2012 12-1-06

31.    The Policy contains the following Contractors Special Condition Endorsement, **Form TMGL 17810/11**:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ CAREFULLY.

### CONTRACTORS SPECIAL CONDITION

This endorsement modifies insurance provided under the following and applies irrespective of whether coverage for prior work is provided:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

A.  The following is added to

SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS:

Contractors

As a condition precedent to coverage for any claim for injury or damage based, in whole or in part, upon work performed by independent contractors, you must have:

(1) Prior to the start of work, received a written indemnity agreement from the independent contractor holding you

harmless for all liabilities, including costs of defense, arising from the work or the independent contractor; and

(2) Prior to the start of work, obtained certificates of insurance from the independent contractor showing that you are named as an additional insured on the independent contractor's commercial general liability insurance coverage and that coverage shall be maintained with minimum limits of $1,000,000 per occurrence on an occurrence form. Such coverage shall remain in full force and shall not be more restrictive than the coverage provided under this policy. Such certificates must be in place prior to the start of work and copies readily available on both the date of the "occurrence" giving rise to the claim or "suit" and the date that the "occurrence" is notified to us.

(3) Prior to the start of work, obtained proof that the independent contractor has workers compensation insurance if required by the state in which the job(s) is located; and

(4) Prior to the start of work, obtained proof that all licenses as required by local and/or state statute, regulation or ordinance are up to date.

The insured must maintain the records evidencing compliance with paragraphs (1) through (4) for a minimum of ten years from the expiration date of this policy and provide them to us when notifying us of an occurrence. If coverage indicated under (2) and (3) above are not maintained and in force for the duration of the liabilities in respect of the work performed by the independent contractors on your behalf, we shall have no obligation to defend or indemnify any insured for work performed by independent contractors on your behalf represented by the certificates of insurance referenced in (2) and (3) above.

The insurance provided by this policy shall be excess over and above any other insurance available to you and always excess of any insurance provided to you through or by the independent contractor,

272474604v.1

B.   Irrespective of other conditions of this policy, coverage for the Products and Completed Operations hazard is limited as follows:

(1) Coverage is only provided in respect of claims reported to us within the reported time period specified within this policy or the date of the governing statute of limitations, whichever is the earlier; and

(2) As a condition precedent to coverage for any claim arising out of the work completed on a property when such work is subject to a governing law which requires that the owner of the property allow you the insured the right to repair the work, you must have complied with the requirements of the law allowing the right to repair and repair the work; and

(3) Your organization being the insured business organization existing when the policy was bound must legally exist and be in good standing at the time that any claim is notified to us and have an active and listed phone number known to your clients and the ability to respond to a phone call or other communication indicating a problem with any work completed by you within a reasonable time; and

(4) You must keep and maintain records of all work performed for 10 years and ninety days following the expiration of the policy and forward them to us when notifying us of a claim.

Without your compliance with the requirements of applicable law and the above 4 items we shall have no obligation to defend or indemnify you in whole or in part.

32.    There are three additional insured endorsements in the Policy. The

Policy contains Form **TMGL 172 10/11**, which is limited to coverage for ongoing

operations:

A.    **Section II - Who is An Insured** is amended to include as an insured any person or organization <u>for whom you are</u>

17

performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.  Such person or organization is an additional insured only with respect to liability for "bodily injury"…caused, in whole or in part, by:

1.     Your acts or omissions; or

2.     The acts or omissions of those acting on your behalf; in the performance of your **ongoing operations** for the additional insured.

A person's or organization's status as an insured under this endorsement ends when your operations for that additional insured are completed.  (Emphasis added.)  (Emphasis added.)

33.     The Policy also contains Form TMGL 175 10/11, which is an additional insured endorsement for completed operations if required by a written contract, but provides no coverage, indemnity and/or defense obligations to any entity claiming to be an additional insured if the claims do not arise from the named insured's work under a written contract completed during the policy period. The Named Insured's mere presence at a work site shall not be deemed sufficient cause to require coverage, indemnity and/or defense to any person(s) or organization(s) claiming to be an additional insured under the endorsement. If those criteria are met, and if required by the written contract or agreement, the insurance shall be primary, and any insurance maintained by the additional insured shall be excess and non-contributory. Thus, although this AI endorsement provides coverage for coverage opinion, the work must have been completed during the policy period.

34.     Finally, the Policy contains a third blanket additional insured endorsement, Form 176 10/11, which is specifically limited to apartments.

## FIRST CAUSE OF ACTION FOR DECLARATORY RELIEF

(No Obligation under the Policy Due To Sevan Plastering's Misrepresentations)

35.     HGS refers to and incorporates herein by reference each and every allegation set forth above as if set forth here in full.

36.     HGS contends that it has no obligation to defendants Sevan Plastering or Pulte in connection with the Policy due to Sevan Plastering's material misrepresentations in procuring the Policy: Sevan Plastering represented that it affirmatively obtains written agreements with subcontractors 100% of time; and that it obtains certificates of insurance reflecting its inclusion as an additional insured on the insurance policies of its independent contractors. Sevan Plastering did not in fact obtain written agreements with subcontractors 100% of time. It also did not obtain additional insured endorsements from independent contractors in connection with the Project. Sevan Plastering's misrepresentations were material to Twenty Mile's underwriting, and the underwriter issued the Policy in reliance on these misrepresentations.

37.     Sevan Plastering 's misrepresentations on its insurance applications did not come to the forefront until discovery in the underlying action revealed for the first time that Sevan Plastering utilized subcontractors to perform work on the

project. Sevan Plastering's responses to admissions requests revealed that Sevan Plastering did not obtain written agreements with subcontractors 100% of the time nor did it obtain additional insured endorsements from independent contractors. Prior to the discovery conducted on this issue, HGS was not aware that Sevan Plastering had made the various misrepresentations described above.

38.     Thus, HGS is entitled to a declaration of no coverage for the underlying action under the Policy due to Sevan Plastering's material misrepresentations in the application to procure the Policy.

39.     HGS is informed and believes and on that basis alleges that an actual dispute exists between HGS and defendants to the extent Sevan Plastering and/or Pulte claim any obligation by HGS under the Policy in relation to the underlying action, and HGS is entitled to a judicial declaration of its rights and obligations, and the rights and obligations of the parties herein with respect to any obligation in the underlying action in connection with the Policy.

## **SECOND CAUSE OF ACTION FOR DECLARATORY RELIEF**

### (Contractors Special Condition Endorsement)

40.     HGS refers to and incorporates herein by reference each and every allegation set forth above as if set forth here in full.

41.     HGS contends there is no coverage under the Policy and that it has no duty to defend or indemnify Sevan Plastering, Pulte or any entity in connection with

272474604v.1

the underlying action based upon application of the Contractors Special Condition Endorsement in the Policy, which precludes coverage in its entirety if the insured fails to satisfy any or all of the conditions precedent set forth in the endorsement. Sevan Plastering failed to comply with the Contractors Special Condition Endorsement in the Policy, as follows:

a. In its discovery responses served in the underlying action, Sevan Plastering admitted that it "did not obtain written agreements with any of the independent contractors it hired to perform the work which is the subject of the claims against Sevan and HGS in the above-referenced action regarding that work."

b. In its discovery responses served in the underlying action, Sevan Plastering admitted that "prior to the start of work, Sevan did not receive from any of the independent contractors it hired to perform the work which is the subject of the claims against Sevan and HGS in the above-referenced action any written indemnity agreements holding Sevan harmless for all liabilities, including costs of defense, arising from the work or the independent contractors."

c. Sevan Plastering failed to comply with the Contractors Special Condition endorsement's requirement to obtain certificates of insurance from the independent contractors showing Sevan Plastering as an

21

additional insured on the independent contractors' commercial general liability insurance coverage. Though Sevan Plastering produced certificates of insurance for its subcontractors, the certificates identified Sevan only as a certificate holder – not as an *additional insured.* Each of the certificates states: "If the certificate holder is an ADDITIONAL INSURED, the policy(is) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s)." Sevan Plastering has produced no additional insured endorsements in the underlying action, and Sevan Plastering's corporate representatives testified that all project documents were produced.

42.     By the terms of the Contractors Special Condition Endorsement, since Sevan Plastering failed to satisfy the conditions precedent in the endorsement, coverage is not afforded for the underlying action, including any duty to any insured.

43.     Since the Contractors Special Condition Endorsement is in the Policy, and Sevan Plastering failed to satisfy the conditions precedent in the Contractors Special Condition Endorsement, there is no coverage under the Policy for the underlying action.

272474604v.1

44.     Upon information and belief, an actual dispute exists between HGS and defendants as to the application of the Contractors Special Condition Endorsement in the Policy and, as a result, a judicial determination is necessary to resolve this dispute.

### THIRD CAUSE OF ACTION FOR DECLARATORY RELIEF

(Work was not performed during the Policy Period)

45.     HGS refers to and incorporates herein by reference each and every allegation set forth above as if set forth here in full.

46.     Sevan Plastering did not self-perform work on the Project that was completed during the March 30, 2012, to March 30, 2013 policy period. Thus, there could have been no damages or injuries that occurred during the policy period, and the claim does fall within the purview of coverage in the first instance.

47.     Similarly, the sole additional insured endorsement that could potentially apply is Form TMGL 175 10 11, which provides coverage to any additional insured when required in a construction agreement with the named insured, but requires that the work of the insured be completed during the policy period.

48.     Thus, there is no possibility of covered liability for the underlying action under the Policy.

49.     Upon information and belief, an actual dispute exists between HGS and defendants as whether there is coverage for the underlying action pursuant to the Policy, and as a result, a judicial determination is necessary to resolve this dispute.

## FOURTH CAUSE OF ACTION FOR DECLARATORY RELIEF

### (Prior Completed Work Exclusion)

50.     HGS refers to and incorporates herein by reference each and every allegation set forth above as if set forth here in full.

51.     The Prior Work exclusion precludes coverage for any work that is completed by the insured prior to the inception of the Policy on March 30, 2012. Similarly, the sole additional insured endorsement that could potentially apply is Form TMGL 175 10 11, which provides coverage to any additional insured when required in a construction agreement with the named insured, but requires that the work of the insured be completed during the policy period.

52.     To the extent that Sevan plastering performed all its work prior to March 30, 2012, the Prior Work exclusion bars coverage.

53.     Thus, there is no possibility of covered liability for the underlying action under the Policy.

54.     Upon information and belief, an actual dispute exists between HGS and defendants as to the application of the Prior Completed Work Exclusion in the Policy, and as a result, a judicial determination is necessary to resolve this dispute.

272474604v.1

## FIFTH CAUSE OF ACTION FOR DECLARATORY RELIEF

(Condominium or Townhouse Liability Exclusion)

55.    HGS refers to and incorporates herein by reference each and every allegation set forth above as if set forth here in full.

56.    The Condominium or Townhouse Liability Exclusion states that the insurance does not apply to any property damage nor does HGS have any duty to defend any claim related in any way with the named insured's work that is part of or incorporated into any condominium, townhouse, mixed-use project. The exclusion applies to ongoing operations as well as completed operations.

57.    Thus, there is no possibility of covered liability for the underlying action under the Policy.

58.    Upon information and belief, an actual dispute exists between HGS and defendants as to the application of the Condominium or Townhouse Liability Exclusion in the Policy, and as a result, a judicial determination is necessary to resolve this dispute.

## SIXTH CAUSE OF ACTION FOR RESCISSION

59.    HGS refers to and incorporates herein by reference each and every allegation set forth above as if set forth here in full.

60.     In connection with the submission of its application for each of the Policy, Sevan Plastering was obligated to communicate the true facts within its knowledge that were material to the risk and issuance of the Policy.

61.     Sevan Plastering misrepresented and concealed information that was material to underwriting the risk.

62.     If Sevan Plastering had communicated the true facts, the underwriter would not have issued the Policy, or it would have issued the Policy on different terms and/or for different premiums.

63.     HGS rescinded the policy, notified Sevan Plastering of the rescission, and returned Sevan Plastering's premium on April 7, 2022, which was accepted on April 8, 2022, and confirmed by Sevan Plastering's owner and registered agent on April 11, 2022.

64.     HGS contends that it is entitled to a finding of rescission of the Policy rendering the policy void *ab initio* by reason of Sevan Plastering's material misrepresentations and omissions pursuant to Florida law.

65.     HGS has no adequate remedy at law.

66.     An actual dispute exists between HGS and defendants in that HGS contends that it is entitled to rescission of the Policy and desires a judicial determination of its rights and obligations and the rights and obligations of the parties herein with respect to rescission of the Policy.

## <u>SEVENTH CAUSE OF ACTION FOR DECLARATORY RELIEF</u>

(No Duty to Defend Sevan Plastering in the Underlying Action)

67.   HGS refers to and incorporates herein by reference each and every allegation set forth above as if set forth here in full.

68.   HGS contends it has no duty to defend Sevan Plastering, or any insured, with respect to the underlying action under any of the Policy.

69.   Upon information and belief, an actual dispute exists between HGS and Sevan Plastering as to HGS's lack of a duty to defend Sevan Plastering or any insured in connection with the underlying action under the Policy, and a judicial determination is necessary to resolve this dispute.

## <u>EIGHTH CAUSE OF ACTION FOR DECLARATORY RELIEF</u>

(No Duty to Indemnify Sevan Plastering in the Underlying Action)

70.   HGS refers to and incorporates herein by reference each and every allegation set forth above as if set forth here in full.

71.   HGS contends it has no duty to indemnify Sevan Plastering, or any insured, with respect to the underlying action.

72.   Upon information and belief, an actual dispute exists between HGS and Sevan Plastering as to HGS's lack of a duty to indemnify Sevan Plastering or any insured in connection with the underlying action under the Policy, and a judicial determination is necessary to resolve this dispute.

272474604v.1

## NINTH CAUSE OF ACTION FOR DECLARATORY RELIEF

### (No Duty to Defend Pulte in the Underlying Action)

73.     HGS refers to and incorporates herein by reference each and every allegation set forth above as if set forth here in full.

74.     HGS contends it has no duty to defend Pulte or any purported insured in the underlying action under any of the Policy.

75.     The Policy provides that there is a duty to defend an insured against a "suit."  A "suit" is defined as a civil proceeding . . .to which this insurance applies. There is no suit against Pulte and, therefore, no duty to defend nor any duty to reimburse Pulte for attorneys' fees or legal expenses associated with the defense of a suit.

76.     The Conditions section of the Policy provides that no insured will, except at the insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without the company's consent. Since Pulte voluntarily incurred expenses to repair the project, the voluntary payment provision applies to preclude coverage for this matter.

77.     Upon information and belief, an actual dispute exists between HGS and Pulte as to HGS's lack of a duty to defend Pulte or any purported insured in the underlying action under the Policy, and a judicial determination is necessary to resolve this dispute.

272474604v.1

## TENTH CAUSE OF ACTION FOR DECLARATORY RELIEF

(No Duty to Indemnify Pulte in the Underlying Action)

78.     HGS refers to and incorporates herein by reference each and every allegation set forth above as if set forth here in full.

79.     HGS contends it has no duty to indemnify Pulte or any purported insured with respect to the underlying action.

80.     Upon information and belief, an actual dispute exists between HGS and Pulte as to HGS' lack of a duty to indemnify Pulte in the underlying action under the Policy, and a judicial determination is necessary to resolve this dispute.

## PRAYER FOR RELIE

**WHEREFORE,** in light of the foregoing, Plaintiff HGS respectfully submits that judgment should be entered as follows:

1.      As to the first cause of action, for a judicial declaration by this Court that HGS has no obligation in relation to the underlying action under the Policy due to Sevan Plastering's material misrepresentations in procuring the Policy;

2.      As to the second cause of action, for a judicial declaration by this Court that the Contractors Special Condition Endorsement of the Policy precludes coverage for any insured or additional insured in relation to the underlying action;

3.     As to the third cause of action, for a judicial declaration by this Court that the work was not performed for the Project during the effective dates of the Policy, and thus there is no coverage for the underlying action;

4.     As to the fourth cause of action, for a judicial declaration by this Court that the Prior Completed Work Exclusion under the Policy precludes coverage for any insured or entity in relation to the underlying action;

5.     As to the fifth cause of action, for a judicial declaration by this Court that Condominium or Townhouse Liability Exclusion under the Policy precludes coverage for any insured or entity in relation to the underlying action;

6.     As to the sixth cause of action, for an order that HGS is entitled to rescind the Policy due to Sevan Plastering's material misrepresentations and omissions;

7.     As to the seventh cause of action, for a judicial declaration by this Court that HGS has no duty to defend Sevan Plastering in the underlying action under the Policy;

8.     As to the eight cause of action, for a judicial declaration by this Court that HGS has no duty to indemnify Sevan Plastering in the underlying action under the Policy;

9.     As to the ninth cause of action, for a judicial declaration by this Court that HGS has no duty to defend Pulte in the underlying action under the Policy;

272474604v.1

10.     As to the tenth cause of action, for a judicial declaration by this Court that HGS has no duty to indemnify Pulte in the underlying action under the Policy;

11.     For costs of suit incurred herein;

12.     For Attorneys' fees incurred herein; and

13.     For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

HGS hereby demands a jury trial on all issues so triable.

Dated this 28th day of July, 2022.

 /s/ Melissa D. Krepps
Melissa D. Krepps
Florida Bar No.: 595551
**WILSON ELSER MOSKOWITZ**
**EDELMAN & DICKER LLP**
111 North Orange Avenue
Suite 1200
Orlando, FL 32801
Telephone: 407.203.7599
Facsimile: 407.648.1376
E-mail:  melissa.krepps@wilsonelser.com

272474604v.1